UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:18-CR-156-DCR
(Related Civil Action No. 5:20-CV-480-DCR)

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

V.                              **RECOMMENDED DISPOSITION**

LAMAR MONTEZ FORD,                                                                   DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Lamar Ford was sentenced to a 282 month period of incarceration with a term of 8 years of supervised release after pleading guilty to possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1). [R. 1]. He now moves to vacate his sentence, pursuant to 28 U.S.C. § 2255, on three grounds: (1) the District Court applied a sentencing enhancement using prior state convictions which were not properly authenticated under 21 U.S.C. § 851; (2) ineffective assistance of counsel due to counsel's failure to object to the certification of Ford's prior state convictions; and (3) that he did not knowingly or voluntarily waive his direct appeal rights during a meeting with counsel post-sentencing. [R. 48 at p. 4]. Having been fully briefed, this matter is now ripe for review. This Court recognizes that Ford is proceeding pro se and construes his motion more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). Nevertheless, due to the reasons discussed herein, Ford fails to establish that he is entitled to relief under 28 U.S.C. § 2255. Therefore, it is RECOMMENDED that Ford's motion to vacate be DENIED.

## I. STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. Pursuant to 28 U.S.C. § 2255, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process. *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

## II. ANALYSIS

<u>Ford's Sentencing Claims</u>

Prior to sentencing, the United States filed a notice into the record under 21 U.S.C. § 851, stating that Ford had "previously been convicted of three state felony drug offenses of Trafficking in a Controlled Substance - 1st Degree, by final judgment of the Boyle County Circuit Court in indictment 11-CR-159 on or about October 2012. The above Defendant [Ford] has also been convicted of a separate state felony drug offense of Trafficking in a Controlled Substance -1st

Degree by final judgment of the Boyle County Circuit Court in indictment 11-CR-158 on or about October 2012." [R. 15]. As a result of having been previously convicted of a serious drug felony, Ford's mandatory minimum sentence increased from not less than 5 years and not more than 40 years of imprisonment, to not less than 10 years and not more than life imprisonment, under 21 U.S.C. § 841. In addition to the higher mandatory minimum sentence Ford faced upon conviction in this case, he was also determined to be a career offender under § 4B1.1 of the 2018 Guidelines Manual. In his present motion for relief under § 2255, Ford alleges the District Court erred when it relied upon his prior state convictions at the time of sentencing, resulting in an incorrect sentence. To the extent that his claim may be read to apply to either the increased mandatory minimum sentence he faced, and to his career offender enhancement, the Court will address both topics below.

Notice under 21 U.S.C. § 851

Ford argues that the United States did not properly authenticate his prior state convictions as required under 21 U.S.C. § 851. In response, the United States argues that it did provide the required proof of Ford's prior state convictions. [R. 52 at p. 3-4]. In addition, the United States argues that Ford waived his right to bring this claim under 28 U.S.C. § 2255 in his plea agreement. [R. 52 at p. 1-2].

Ford has in fact waived his ability to challenge the United States' notice under § 851. Ford's plea agreement states that, except for claims of ineffective assistance of counsel, he agrees to "waive[] the right to attack collaterally the guilty plea, conviction, and sentence." [R. 28 at p. 4]. Generally, "[i]t is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-

64 (6th Cir. 2001). The waiver must be knowing and voluntary. *Id*. at 764. In order to overcome this waiver, Ford must articulate a basis for attacking its validity. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (citing *United States v. McGilvery*, 403 F.3d 361, 363 n. 2 (6th Cir. 2005); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)). A defendant may challenge the validity of the waiver on the basis that his plea was not knowing or voluntary, or that it was the product of ineffective assistance. *Id*. at 422. A waiver is knowing and voluntary when a defendant testifies at his plea hearing that he "reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not coerced." *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (citing *Fleming* at 764).

Ford argues in his reply that he pled guilty without knowing and understanding the effect his prior convictions would have on his sentence. [R. 54 at p. 4]. He also states that he "doesn't recall" the Rule 11 colloquy in which he and the Court engaged during his rearraignment and that "absent proof" of the exchange it remains "imaginary." [R. 54 at p. 2-3]. However, "proof" of the extensive Rule 11 colloquy which the District Court conducted exists in the record. During Ford's rearraignment, the Court first questioned Ford to establish his competency to plead guilty. [R. 49 at p. 3-4]. The Court specifically asked Ford whether he had read his plea agreement and whether he was "convinced" that he understood all its terms; Ford replied, "Yes, sir" to both questions. [R. 49 at p. 4]. The Court asked Ford if he had "ample opportunity to discuss" his plea agreement and his indictment with his attorney, to which Ford responded, "Yes, sir." [*Id*.]. The Court confirmed with Ford that he signed the plea agreement, to which he responded affirmatively, "Yes, sir." [*Id*.]. The Court then asked the United States to explain the essential elements of the plea agreement. [R. 49 at p. 5]. The United States responded by explaining, among other things, that Ford was waiving certain appellate rights, including the right to collaterally attack his guilty plea, conviction, and

sentence. [R. 49 at p. 6]. The Court further questioned Ford, asking if he understood that he would be adjudged guilty if the Court accepted his plea agreement, to which Ford responded, "Yes, sir." [R. 49 at p. 7]. Further, the Court explained Ford's prior state convictions and how they could affect his sentence, to which Ford stated that he understood. [R. 49 at p. 8]. In accepting Ford's plea of guilty, the Court ultimately found that Ford was "fully competent and capable of entering an informed plea," concluding that his plea was "knowing and voluntary." [R. 49 at p. 13].

Due to the extensive nature of the Court's Rule 11 colloquy and Ford's responses that he understood the terms of his plea agreement and the consequences of pleading guilty, Ford has failed to sufficiently prove that his waiver of his right to collaterally attack his sentence was not knowing and voluntary. *United States v. Todaro,* 982 F.2d 1025, 1030 (6th Cir. 1993) ("Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry."). Thus, Ford's waiver should bar him from collaterally attacking his sentence.

Further, even if Ford had not waived his right to collaterally attack his sentence, his claim that the § 851 notice was improper or that the Court erred in relying on his prior conviction to subject him to a higher mandatory minimum sentence is baseless. Ford argues that the United States did not properly authenticate his prior convictions. Under § 851, the District Court may only consider prior convictions at sentencing if the United States first files an information detailing the prior convictions which it intends to rely on for purposes of imposing an increased mandatory minimum sentence. 21 U.S.C. § 851(a).

Under 21 U.S.C. § 841(b)(1)(B), an individual convicted of a crime under § 841(a) may be subject to a higher sentence if he has also previously been convicted of a serious drug felony. Pursuant to a plea agreement, Ford pled guilty to possession with intent to distribute 40 grams or

more of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1). [R. 25]. In October of 2012, Ford was convicted of Trafficking in a Controlled Substance – 1st Degree by final judgment of the Boyle County Circuit Court, Docket No. 11-CR-159. *See* [R. 15; Presentence Investigation Report at p. 11-12]. 21 U.S.C. § 851(a) states that in order to use a prior conviction to seek a sentence enhancement under § 841, the United States must file an information with the Court prior to sentencing stating in writing the previous conviction which it relies on. On February 12, 2019, the United States complied with § 851, filing an information detailing Ford's October 2012 conviction. [R. 15]. Thus, the United States complied with the statute and the District Court properly considered Ford's prior conviction when applying the sentencing enhancement under § 841. In other words, Ford's argument that the United States did not provide the proper "certification" of his prior state convictions is without merit and does not entitle him to relief under § 2255.

In addition to failing to point to any actual deficiency with the § 851 notice, the statute of limitations to challenge the validity of Ford's prior convictions has run. The statute of limitations governing Ford's ability to attack the validity of the October 2012 conviction used to apply the § 841 enhancement has run. Under § 851(e), "[n]o person who stands convicted of an offense under this part [21 USCS §§ 841 et seq.] may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The information was filed February 12, 2019, which was well beyond 5 years from Ford's conviction in October 2012. Thus, Ford is unable to challenge the validity of his conviction and his claim must fail.

Finally, it must be noted that in addition to being subject to an increased mandatory minimum sentence due to his prior drug felony convictions, Ford was also given an increased

sentence because of being a career offender under the Guidelines. To the extent that Ford seeks to challenge the sufficiency of the United States' § 851 notice for the purpose of attacking his career offender sentencing enhancement, that claim is also without merit. Section 4B1.1(b)(1) of the Guidelines, which explains the career offender enhancement, does not require the United States to file an information under § 851 in order for an offender to be classified as a career offender and therefore subject to an enhanced sentence. *See United States v. Pruitt,* 545 F.3d 416, 424-25 (6th Cir. 2008); *Jones v. United States*, No. 2:05-CR-62, 2010 U.S. Dist. LEXIS 22326, at *34-35 (E.D. Tenn. Mar. 10, 2010); *Walker v. United States*, No. 1:10-cr-34, 2017 U.S. Dist. LEXIS 63360, at *5 (E.D. Tenn. Apr. 26, 2017).  As a result, Ford's efforts to attack the § 851 notice for the purpose of undermining the Court's finding that he is a career offender is without merit  and will not entitle him to relief in this action.

Therefore, Ford has waived his right to collaterally attack his sentence by alleging error at sentencing.  In addition, because the United States properly filed and Court properly relied upon a notice of Ford's prior convictions, he was correctly determined to be subject to an increased mandatory minimum period of incarceration upon conviction in this case.  In addition, he points to no error in the finding that he is a career offender, and the enhancement was properly applied.

Ford's Ineffective Assistance of Counsel Claim

Ford argues that his trial counsel, Pamela Perlman, was ineffective because she failed to object to the alleged improper certification of Ford's prior convictions. [R. 46 at p. 5].

To prevail on ineffective assistance of counsel under Section 2255, Ford must show two essential elements: (1) deficient performance and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a

defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, Ford must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690.

Second, Ford must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977

F.2d 222, 229 (6th Cir. 1992).

Here, Ford has failed to show that counsel was ineffective in failing to object to the certification of Ford's prior state convictions because, as discussed above, the United States complied with 21 U.S.C. § 851 and the prior convictions were properly considered by the District Court. Thus, Ford fails to show deficient performance. *See Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001) ("counsel cannot be ineffective for a failure to raise an issue that lacks merit"); *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) ("Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law."). Further, Ford fails to show prejudice, as any objection to the certification of Ford's prior convictions under § 851 would have been futile because both the § 851 notice was properly made, and any challenge of the conviction would have been barred by the statute of limitations. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (finding counsel was not ineffective for failing to make an objection which would have been otherwise futile). Thus, Ford is not entitled to relief under § 2255 on his ineffective assistance of counsel claim.

Ford's Waiver of Appeal Claim

In his third and final claim, Ford is not attacking the validity of the waiver contained in his plea agreement, but directs his argument to a waiver signed after sentencing, in the presence of his counsel allegedly reflecting his then existing mental state related to further appealing his case. The waiver Ford is referring to is a sheet of paper which Ford signed during a meeting with his attorney after the sentencing. *See* [R. 52-1]. The sheet of paper simply says, "Post sentencing I, Lamar Ford, do waive further appeal." [*Id*. at p. 2]. On the paper, the words "do not waive" are marked through,

followed by "do waive," which is underlined and initialed "LF." [*Id.*]. The paper is dated December 2, 2019. [*Id.*]. Ford claims that on December 2, 2019, following sentencing in his case, he was influenced to sign a waiver of his right to a direct appeal of his "constitutional issue(s) claimed." [R. 46 at p. 6]. He claims that he did not "knowingly, intelligently, or voluntarily" waive his right to file a direct appeal of the application of the career offender sentencing enhancement to his case. [*Id.*].

In this claim, at most, the "waiver" signed by Ford on December 2, 2019 is evidence that he and his attorney discussed an appeal and at that time he did not wish to file one. The Court construes this argument to be Ford asserting that his lawyer was ineffective in failing to further appeal his case.

Ford's counsel was not ineffective in failing to file a notice of appeal. In determining whether counsel was ineffective for failing to file a notice of appeal, the Court looks to the test outlined in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003); *Strickland*, 466 U.S. at 668. The Sixth Circuit has gone on to expand this protection for defendant(s) who have waived all or most of their right to appeal. *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). Even though the defendant has waived all or some of his rights to appeal, attorneys will still be found to have provided ineffective assistance of counsel if the attorney fails to file an appeal that a criminal defendant explicitly requests. *Id.* To help the federal courts in their analysis, *Roe* sets forth a three-part sequential analysis. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Roe* at 477. Second, if the Court finds that the defendant did not provide express instructions, then it must determine whether counsel consulted with the defendant about an appeal. *Id.* at 478. Finally, if there was no consultation, then the Court must decide whether the failure to consult was

objectively unreasonable. *Roe* at 479. Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances. *Johnson v. United States*, 364 F. App'x 972 (6th Cir. 2010) (citing *Roe*, 528 U.S. at 480).

The first prong of the *Roe* analysis is whether defendant gave counsel express instructions to file an appeal. "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Failing to file a notice of appeal when a defendant requests one satisfies both prongs of the ineffective-assistance-of-counsel test of *Strickland*. *Campbell*, at 357; *Ludwig*, 162 F.3d at 459. It is inappropriate to inquire whether any appeal would be successful. *Peguero v. United States*, 526 U.S. 23, 28 (1999). Similarly, a defendant's waiver of appellate rights does not excuse counsel's failure to file a notice of appeal. *See Campbell*, 686 F.3d at 360 (holding counsel ineffective for failing to file notice of appeal when instructed to do so by defendant even if defendant waived all appellate rights). Thus, counsel has a duty to file a timely notice of appeal if requested to do so by his or her client. *Ludwig*, 162 F.3d at 459.

Here, there is no evidence that Ford ever asked his attorney to file an appeal. Ford does not allege that he ever instructed counsel to file an appeal and Perlman stated that after sentencing Ford signed a waiver of any further appeal. [R. 52-1]. Thus, based upon the lack of evidence that he ever instructed his attorney to file an appeal, this Court concludes that Ford did not ask his attorney to file an appeal.

The second prong of the *Roe* analysis is whether counsel consulted with the defendant about an appeal. *Roe* at 478. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover

the defendant's wishes." *Regalado*, 334 F.3d at 525 (citing *Roe*, 528 U.S. at 478). If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If, on the other hand, counsel failed to consult with his client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance." *Id.*

Here, neither of the parties have addressed whether Perlman consulted with Ford about an appeal. However, from the record, Perlman and Ford had some conversation about an appeal after Ford's sentencing. Both Perlman and Ford talk about meeting after the sentencing where Ford signed a sheet of paper saying he waived further appeal. [R. 52-1; 46]. Thus, the Court concludes that Perlman did consult with Ford about an appeal.

However, even if Perlman had failed to consult with Ford about an appeal, there would still be no ineffective assistance of counsel here because Perlman did not have a constitutional duty to consult with Ford regarding an appeal. Counsel has a duty to consult with a defendant about an appeal if there is reason to think: "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. "In determining whether counsel's failure to consult was reasonable, a court must consider all the information counsel knew or should have known. *Id.* "Factors to consider include whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* "However, even in cases involving a plea of guilty, the reviewing court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

In this case, Perlman states that that she did not believe Ford had any valid grounds upon which to object to the § 851 notice or his sentencing enhancements. [R. 52-1 at p. 1]. Further, there is no evidence Ford demonstrated to Perlman that he wished to file an appeal or that he was interested in appealing his sentencing enhancement. Instead, the only evidence is that Ford did not wish to file an appeal after the sentencing. [R. 52-1 at p. 2]. Thus, it would not have been unreasonable for Perlman to fail to consult with Ford regarding an appeal.

Accordingly, Ford has failed to establish by a preponderance of the evidence that Perlman provided constitutionally deficient assistance by failing to file a notice of appeal. Finding Ford has failed to establish the deficient performance prong of *Strickland*, the Court need not consider the prejudice prong on this claim. *Strickland*, 466 U.S. at 697. Thus, Ford is not entitled to relief under § 2255 and his third claim must fail.

Ford's Request for an Evidentiary Hearing

Ford requests an evidentiary hearing on all three of his claims. [R. 54 at p. 8]. However, his claims that the court erred at sentencing, or that counsel was ineffective in failing to challenge his prior convictions present no issue requiring a hearing.  The only remaining issue involves whether Ford's "waiver of further appeal" signed in the presence of counsel following  sentencing merits an evidentiary hearing. [R. 52-1 at p. 2]. For the following reasons, it does not.

In Ford's third claim, he alleges that the district court, trial counsel, and the government influenced "defendant's signed wavering [*sic*] direct appeal right(s) of constitutional issues claimed." [R. 46 at p. 6]. His claim is not, as discussed above, that counsel fail to file an appeal when directed to do so, rather, it is merely that he was influenced to inform counsel that he did not wish to pursue further appeal.

"[T]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). When a factual dispute arises, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). The decision to grant an evidentiary hearing is left to the discretion of the courts. *Id.* However, "a full blown evidentiary hearing [is not required] in every instance.... Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Smith v. United* States, 348 F.3d 545, 550-51 (6th Cir. 2003) (internal quotation marks and citation omitted).

In Ford's reply, his claim that he was influenced to forego further appeal changed to a claim that the signature on the paper isn't his signature and that trial counsel's affidavit is "fraudulent." [R. 54 at p. 6]. In considering this claim, the court is informed that it is not required to hold an evidentiary hearing if the "petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Here, Ford's statement that he did not sign the waiver is inherently incredible because it is contradicted by both Perlman's affidavit and Ford's own statements in his § 2255 petition. *See United States v. Walls*, No. 2:05-cr-92-WOB, 2008 WL 927926, at *12 (E.D. Ky. Apr. 4, 2008) ("A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of law.") (citing *Gibson v. United States*, No. CV-06-5740, 2007 WL 210417, at *4 (E.D.N.Y. Jan. 25, 2007)). Ford admitted twice in his petition to signing the waiver,

even giving the date he signed it. [R. 46 at p. 6]. His entire third claim centers around his allegation that he was wrongfully influenced into signing the waiver, and did so "not knowingly, intelligently, or voluntarily." [*Id.*]. Thus, his statements in his reply that he never signed the waiver is directly contradicted by his previous statements in his motion to vacate admitting to signing the waiver.

In *United States v. Israel*, this Court encountered a similar circumstance where a defendant filed a motion to vacate under § 2255 alleging that he would have pled guilty but for his counsel's improper advice. *United States v. Israel*, No. 5:14-98-DCR-CJS, 2018 U.S. Dist. LEXIS 34542 (E.D. Ky. Feb. 12, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 34704 (E.D. Ky., Mar. 1, 2018). In the same motion, the defendant put forth an entirely new set of facts different from those presented at trial which, if true, would serve to exonerate him. *Id*. at *60-61. In denying his evidentiary hearing, this Court found that the defendant's statements detailing an alternative set of events where he was in fact innocent directly contradicted his claim that he would have pled guilty if his trial counsel had properly advised him. *Id*. Similarly, the undersigned recommends Ford's evidentiary hearing be denied as well because his allegation that he never signed the waiver of his appeal is inherently incredible.

Further, a district court is not required to hold an evidentiary hearing where the record conclusively shows that the petitioner is entitled to no relief on their claim. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *Valentine*, 488 F.3d at 333 (quoting *Arrendondo*, 178 F.3d at 782). As discussed above, the District Court properly considered Ford's prior convictions when applying the sentencing enhancement under 21 U.S.C. § 841 and § 4B1.1 of the 2018 Guidelines Manual. Further, counsel's failure to object to the United States' certification of Ford's prior convictions under 21 U.S.C. § 851 did not rise to the level of ineffective assistance because any objection would have been futile. Lastly, Ford's third claim does not state a constitutional

error and counsel was not ineffective for failing for file a notice of appeal on behalf of Ford. Thus, Ford is not entitled to relief under § 2255, and the Court is not required to hold an evidentiary hearing.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005). For dismissals on procedural grounds, as to when a Certificate of Appealability to be issued, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Here, Ford has not made a "substantial showing" as to any claimed denial of his rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

### IV. RECOMMENDATION

As such, having reviewed the defendant's pending motion to vacate [R. 46], and in

accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, IT IS RECOMMENDED that:

1. Ford's motion to vacate his sentence under § 2255 [R. 46] be DENIED;

2. Ford's request for an evidentiary hearing be DENIED;

3. A Certificate of Appealability be DENIED as to all issues raised, should Ford so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed March 23, 2021.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge